UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY and FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, <br> Plaintiffs <br><br> -against- <br><br> MP3 CONSTRUCTION, INC., PATRYCJA H. FELDMAN and THE ESTATE OF MARK K. FELDMAN, <br> Defendants | Civil Action No. <br><br><br> **COMPLAINT** |

Plaintiff, Aegis Security Insurance Company ("Aegis") and First Indemnity of America Insurance Company ("FIA"), by and through their attorneys, Alongi & Associates, LLC, states the following for their complaint against Defendants, MP3 Construction, Inc. ("MP3"), Patrycja H. Feldman and the Estate of Mark K. Feldman (collectively "Indemnitors"):

## THE PARTIES

1. Aegis is a Pennsylvania corporation with its principal place of business located at 4507 North Front Street, Suite 200, Harrisburg, Pennsylvania 17110.

2. FIA is a New Jersey corporation with its principal place of business located at 2740 Route 10 West, Suite 205, Morris Plains, New Jersey 07950.

3. MP3 is a New York corporation with its principal place of business located at 501 Winding Road, Old Bethpage, New York 11804.

4. Patrycja H. Feldman is an adult individual and citizen of the State of New York residing at 110 South Road, Sands Point, New York 11050.

5. The Estate of Mark K. Feldman, is the Estate of Mark K. Feldman, a deceased citizen of the State of New York who resided at 110 South Road, Sands Point, New York 11050.  Patricia H. Feldman is the Executrix of the Estate of Mark K. Feldman.

## JURISDICTION and VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as this action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

2. The venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C. §1391(b)(2).

## FACTS COMMON TO ALL COUNTS

### The Indemnity Agreement

1. As an inducement for Aegis to issue surety bonds on behalf of MP3, MP3, Patrycja H. Feldman and Mark K. Feldman executed the Agreement of Indemnity dated March 14, 2016 attached hereto as Exhibit 1 (the "Indemnity Agreement").

2. Paragraph 3 of the Indemnity Agreement entitled "Indemnification and Hold Harmless", provides:

> (a)  The [Indemnitors] shall exonerate, hold harmless, indemnify and keep indemnified [Aegis] from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, (including, but not limited to interest, court costs, counsel fees, and/or investigative costs), and from and against any and all other such losses and expenses which [Aegis] may sustain or incur:  (i) by reason of having executed or procured the execution of Bonds; (ii) by reason of the failure of MP3 or any one or more of the [Indemnitors] to perform or comply with any of the covenants, terms or conditions of this Agreement; (iii) in enforcing any of the covenants or conditions of this Agreement; (iv) in making an investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover losses,

expenses, or unpaid Bond premium in connection with any Bond; or (v) in prosecuting or defending any action or claim in connection with any Bond, whether [Aegis], at its sole option, elects to employ its own counsel or permits or requires MP3 to make arrangements for [Aegis'] legal representation.

(b) The [Indemnitors] shall make payment to [Aegis] immediately upon demand by [Aegis]. [Aegis] may demand payment in an amount: (i) equal to the amount of any reserve set by [Aegis], or (ii) equal to such amount as [Aegis], in its sole judgment, shall deem sufficient to protect it from loss. [Aegis] shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the [Indemnitors] are obligated to indemnify [Aegis] under the terms of this Agreement. [Aegis'] rights under this Agreement shall not be limited to the amount of any demand, reserve, deposit, or collateral from any [Indemnitor] or others. [Aegis] shall have no obligation to invest, or to provide a return on, the deposit. [Indemnitors] shall be entitled to the refund of any unused portion of the deposit upon termination of the liability of [Aegis] on all Bonds and the performance by [Indemnitors] of all obligations to [Aegis] under the terms of this Agreement. [Aegis'] demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the [Indemnitors] at the address stated herein, or at the addresses of the [Indemnitors] last known to [Aegis], regardless of whether actually received. The [Indemnitors] acknowledge that the failure of the [Indemnitors] to deposit with [Aegis], immediately upon demand, the sum demanded by [Aegis] as collateral security shall cause irreparable harm to [Aegis] for which [Aegis] has no adequate remedy at law. The [Principal] and [Indemnitors] agree that [Aegis] shall be entitled to injunctive relief for specific performance of the obligation of [Indemnitors] to deposit with [Aegis] the sum demanded as collateral security and hereby waive any claims or defenses to the contrary.

(c) In the event of any payment by [Aegis], the [Indemnitors] further agree that in any accounting between [Aegis] and the [Indemnitors], or any one or more of them, Aegis shall be entitled to reimbursement for any and all payments, disbursements and advances made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; and that any vouchers, affidavits or other evidence of any such payments made by [Aegis] shall be prima facie evidence of the propriety and fact of any payment and amount of the liability therefore to [Aegis]. In addition to the payments to be made to [Aegis] as set forth above, the [Indemnitors] agree to pay to [Aegis] expenses

3

> (including, but not limited to, court costs and counsel fees) and interest on all disbursements made by [Aegis] as a consequence of the execution of one or more Bonds, at the rate of two percent above the then prime rate of interest (as published in the Wall Street Journal or other reputable source) as calculated from either the date of issuance by [Aegis] of the Bond, or from the date of each disbursement by [Aegis], at the sole discretion of [Aegis].

3. Paragraph 7 of the Indemnity Agreement titled Prosecution of Claims; Settlement provides:

   > [Aegis] shall have the full and exclusive right, in its name or in the name of [MP3], but not the obligation, to prosecute, compromise, release or otherwise resolve any of the claims, causes of action or other rights assigned to [Aegis] in Paragraph 4 above, upon which terms as [Aegis], in its sole discretion shall deem appropriate.  [Aegis] shall have the exclusive right in its name or in the name of [MP3] to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any Bond or to take whatever other action it may deem necessary, expedient or appropriate.  Any amount paid by [Aegis] in good faith under the belief that (1) [Aegis] was or might be liable therefore, and (2) such payments were necessary or advisable to protect any of [Aegis'] rights or to avoid or lessen [Aegis'] liability or alleged liability are within the sole discretion of [Aegis] as to whether or to adjust, settle or compromise.  [Aegis'] determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled or defended shall be final, binding and conclusive upon the [Indemnitors]. In the event that the [Indemnitors] request [Aegis] to litigate any claim or demand, or to defend a suit or to appeal from a judgment, and in the event that [Aegis]agrees to do so, which decision shall rest in the sole discretion of [Aegis], [Aegis] shall have the right to demand and receive from the [Indemnitors] prior to commencing the defense or appeal, such cash or collateral security satisfactory to [Aegis] in kind and amount to be used in paying any judgment or judgments rendered, or that might be rendered, with interest, costs, expenses and attorney's fees, including those of [Aegis].  In the event that [Aegis] decides to litigate any claim, the [Indemnitors] shall fully cooperate with [Aegis] in the defense or prosecution thereof.

4. In accordance with Paragraph 1(c) any one or more of the following shall be an "Event of Default":

   > (i) any declaration of default by an obligee on any Bond; (ii) any abandonment, forfeiture or breach of, or failure, refusal or inability to perform any Contract or obligation which is the subject of any Bond,

4

whether actual or alleged; (iii) any failure, delay, refusal or inability of the [Principal] to pay claims, bills, Bond premiums, or other indebtedness incurred in, or in connection with the performance of any Contract, to the extent due, in whole or in part; (iv) any failure to perform or comply with, any of the terms, covenants or obligations set forth in this Agreement, including, but not limited to, any Additional Covenants set forth and annexed hereto; (v) any failure to pay or discharge, when due, an indebtedness of any [Indemnitor] to [Aegis], including, but not limited to the payment of Bond premiums and fees, payments in exoneration attorney's fees and the cost of enforcing this Agreement; (vi) any assignment by [MP3] for the benefit of creditors or any appointment or application by [MP3] of a receiver or trustee for [MP3] or its property, whether insolvent or not, or any application by [MP3] for reorganization, dissolution or arrangement under the bankruptcy laws of the United States or any state, possession or territory thereof, or initiation of any such proceeding relating to [MP3] by a third party; (vii) if [MP3] is an individual, [MP3's] death, disappearance, or incompetency, or, if [MP3] is any other type of entity, any change or threat of change in control or existence; (viii) any sale of [MP3's] assets or diminution thereof which impairs [MP3's] ability to conduct business; (ix) any proceeding or the exercise of rights which deprives or impairs [MP3's] ability to use its plant, machinery, equipment, plans, drawings, tools, supplies, manpower, workforce or materials; (x) any other material change in [MP3's] business operation or financial condition or the happening of any event other than those specified above which, in [Aegis'] sole opinion, may expose [Aegis] to loss, cost or expense.

5. Paragraph 13 of the Indemnity Agreement entitled Rights Upon Default states:

Upon the occurrence of any event of Default, or any breach or delay asserted by the Obligee with respect to any Contract or Bond, and in addition to any other rights it may possess under this agreement or as a matter of law [Aegis] shall have the right, at its option and in its sole discretion, and is hereby authorized, but not required with or without exercising any other right or option conferred upon it by law or by the terms of this Agreement, to: (a) take possession of any part of all of the work under any contracts and at the expense of the [Principal] and the [Indemnitors], to complete or arrange for completion of the same; (b) take possession of supplies, tools, plant, equipment, inventory and materials and to use, and consume if necessary, the same in the performance of any Contract; (c) exercise its rights regarding collateral described in Paragraph 3 or 4 of this Agreement; (d) draw down on letters of credit or liquidate or foreclose on any other additional collateral described on any schedule annexed hereto; (e) execute in the name of the [Principal] any instruments deemed necessary or desirable to effectuate the foregoing.

      Election of one or more of the foregoing remedies shall not be deemed a waiver of any other right or remedy of [Aegis].

6. Paragraph 19 of the Indemnity Agreement states:

      If [Aegis] procures the execution of any Bond by other sureties or executes the Bonds with co-sureties or reinsures any portion of said Bonds with reinsurance sureties, then all of the terms and conditions of this Agreement shall inure to the benefit of such sureties, co-sureties and reinsuring sureties, as their interest may appear.

## The DOT Bonds and Contract

7. In reliance upon the Indemnity Agreement, Aegis issued its performance bond and labor and material bond each in the amount of $1,181,069.21, as surety for MP3, to the State of New York, Department of Transportation ("DOT") (the "DOT Bonds"). A copy of the DOT Bonds are attached hereto as Exhibit 2.

8. The DOT Bonds were issued in connection with MP3's contract with the DOT for crack sealing and joint overlay repairs, Contract No. D263074 (the "Contract").

9. Aegis reinsured the DOT Bonds with FIA.

## The Losses Incurred On The DOT Bonds

10. On or about July 21, 2016, Mark K. Feldman, the owner of MP3, passed away.

11. On or about August 18, 2016, MP3, through its attorneys, notified the DOT that it was terminating the Contract. A copy of the letter from MP3's attorneys is attached hereto as Exhibit 3.

12. On or about September 21, 2016, after MP3 terminated the Contract and abandoned performance on the Contract, the DOT demanded that Aegis complete the Contract in accordance with the DOT Bonds.

13. In addition, Aegis received claims under the DOT Bonds from MP3's subcontractors, laborers and/or material suppliers.

6

14. By letter dated January 18, 2017, Aegis notified the Indemnitors of the DOT's claim to complete the Contract and that as a result of such claim, Aegis established reserves for losses and expenses of $357,291.83. A copy of Aegis' letter of January 18, 2017 is attached hereto as Exhibit 4.

15. Aegis demanded that the Indemnitors deposit with Aegis the sum of $357,291.83 as collateral security to protect Aegis from losses and expenses on the DOT Bond.

16. By letter dated September 11, 2017, Aegis again demanded that the Indemnitors deposit with Aegis the sum of $357,291.83 as collateral security in accordance with their obligations under the Indemnity Agreement. A copy of Aegis' letter of September 11, 2017, is attached hereto as Exhibit 5.

17. The Indemnitors, in violation of their obligations under the Indemnity Agreement have failed and/or refused to comply with Aegis' demands for collateral security.

18. By letter dated December 11, 2017, Aegis and FIA demanded that the Indemnitors, in accordance with their obligations under the Indemnity Agreement pay $384,673.44 for the losses, costs and expenses incurred as a result of Aegis' issuance of the DOT Bond. A copy of Aegis and FIA's letter of December 11, 2017 letter is attached hereto as Exhibit 6.

19. The Indemnitors, in violation of the their obligations under the Indemnity Agreement have failed and/or refused to exonerate, indemnify and hold harmless Aegis from losses, costs and expenses incurred as a result of the issuance of the DOT Bonds.

20. As a result of the claims asserted against the DOT Bonds and the Indemnitors failure to satisfy their obligations under the Indemnity Agreement, Aegis has retained attorneys and may need to retain consultants to assist it in the investigation and resolution of any pending and/or future claims that may arise during the pendency of this action and the protection and enforcement of its rights under the Indemnity Agreement.

## FIRST COUNT

21. Aegis and FIA repeat the allegations of Paragraphs 1 through 20 above as if fully set forth at length herein.

22. Aegis and FIA performed all conditions, covenants and promises, if any, required to be performed on their part in accordance with the terms of the Indemnity Agreement.

23. The Indemnitors materially breached the Indemnity Agreement by, among other things:

    a. Failing to deposit collateral security in the amount of $357,291.83;

    b. Failing to exonerate, indemnify and hold harmless Aegis and FIA for losses, costs and expenses incurred as a result of Aegis' issuance of the DOT Bonds;

    c. Failing to pay Aegis and FIA for the losses, costs and expenses incurred by them as a result of Aegis' issuance of the DOT Bonds;

24. As a direct and proximate result of the defendants' material breach of the Indemnity Agreement as set forth above, Aegis and FIA have sustained damages in an amount in excess of $384,673.44.

**WHEREFORE**, Aegis and FIA demand judgment against the Indemnitors, jointly and severally as follows:

1. For compensatory damages in an amount in excess of $384,673.44 for all amounts which are due from the Indemnitors to Aegis and FIA under the Indemnity Agreement;
2. Ordering and directing that the Indemnitors specifically perform their obligations under the Indemnity Agreement, exonerate Aegis and deposit with Aegis collateral security in the amount of $357,291.83;
3. Awarding interest, attorneys' fees, cost of suit and such other relief as this court deems just and proper.

## SECOND COUNT

25. Aegis and FIA repeat the allegations of Paragraphs 1 through 24 above as if fully set forth at length herein.
26. Aegis has performed all conditions, covenants and promises required to be performed on its part in accordance with the terms of the Indemnity Agreement.
27. The Indemnitors have failed and/or refused, continue to fail and/or refuse to perform the conditions of the Indemnity Agreement on their part.
28. The Indemnity Agreement specifically obligates the indemnitors to provide Aegis with collateral security upon demand if a claim is made against Aegis or if Aegis establishes a reserve.
29. Aegis received claims against the DOT Bonds and has established a reserve.

30. Aegis made demands upon the Indemnitors for the posting of such collateral security but the Indemnitors have failed, neglected and refused to make any such payment or to satisfy their collateral security obligations to Aegis.

31. Accordingly, the Indemnitors have materially breached the Indemnity Agreement by failing or refusing to perform the obligations they owe to Aegis thereunder.

32. Aegis has no adequate remedy at law and Aegis is expressly entitled pursuant to the terms of the Indemnity Agreement to pursue specific performance.

33. Unless this court grants the relief sought herein, Aegis will be irreparably and permanently injured.

34. Consequently, Aegis seeks an order of this court directing the Indemnitors to specifically perform the Indemnity Agreement and compelling the Indemnitors to deposit collateral security with Aegis in the amount of $357,291.83.

**WHEREFORE**, Aegis and FIA demand judgment against the Indemnitors, jointly and severally as follows:

1. For compensatory damages in an amount in excess of $384,673.44 for all amounts which are due from the Indemnitors to Aegis and FIA under the Indemnity Agreement;

2. Ordering and directing that the Indemnitors specifically perform their obligations under the Indemnity Agreement, exonerate Aegis and deposit with Aegis collateral security in the amount of $357,291.83;

3. Awarding interest, attorneys' fees, cost of suit and such other relief as this court deems just and proper.

## THIRD COUNT

35. Aegis and FIA repeat the allegations of Paragraphs 1 through 34 above as if fully set forth at length herein.

36. Aegis justifiably fears that it will sustain losses relative to its obligation as surety for MP3 on the DOT Bonds.

37. By virtue of the Indemnity Agreement and by virtue of the equitable doctrine of quia timet, Aegis is entitled to have the Indemnitors place funds or collateral security with Aegis as sufficient to indemnify Aegis from any loss.

38. The Indemnitors have failed and/or refused and continue to fail and/or refuse to comply with Aegis' demand that they provide Aegis with collateral security pursuant to their obligations under the Indemnity Agreement.

39. Unless and until the Indemnitors provide Aegis with collateral security, Aegis will not be adequately secured for its obligations under the DOT Bonds.

40. Aegis has no adequate remedy at law and Aegis is expressly entitled to assert its quia timet claims.

41. Unless this court grants the relief sought herein, Aegis will be permanently and irreparably injured.

42. Consequently, Aegis seeks an order of this court directing the Indemnitors to deposit with Aegis the sum of $357,291.83.

**WHEREFORE**, Aegis and FIA demand judgment against the Indemnitors, jointly and severally as follows:

1. For compensatory damages in an amount in excess of $384,673.44 for all amounts which are due from the Indemnitors to Aegis and FIA under the Indemnity Agreement;
2. Ordering and directing that the Indemnitors specifically perform their obligations under the Indemnity Agreement, exonerate Aegis and deposit with Aegis collateral security in the amount of $357,291.83;
3. Awarding interest, attorneys' fees, cost of suit and such other relief as this court deems just and proper.

## FOURTH COUNT

43. Aegis and FIA repeat the allegations of Paragraphs 1 through 43 above as if fully set forth at length herein.
44. Aegis, as surety for MP3, is only secondarily obligated under the DOT Bonds while the Indemnitors are primarily obligated under the DOT Bonds and the Indemnity Agreement to discharge all obligations arising under the DOT Bonds and to exonerate Aegis.
45. As a result of the Indemnitors failure to honor their obligations under the DOT Bonds and Indemnity Agreement, Aegis has established a reserve in the amount of $357,291.83 and faces exposure under the DOT Bonds.
46. The Indemnitors have failed and/or refused to exonerate Aegis despite Aegis making a demand upon the Indemnitors to exonerate it by depositing the sum of $357,291.83.
47. Aegis has no adequate remedy at law and Aegis is expressly entitled to pursue exoneration pursuant to the Indemnity Agreement and the common law.

48. Unless this court grants the relief sought herein, Aegis will be permanently and irreparably injured.

49. Consequently, Aegis seeks an order of this court directing the Indemnitors to exonerate Aegis and deposit with Aegis the sum of $357,291.83.

**WHEREFORE**, Aegis and FIA demand judgment against the Indemnitors, jointly and severally as follows:

1. For compensatory damages in an amount in excess of $384,673.44 for all amounts which are due from the Indemnitors to Aegis and FIA under the Indemnity Agreement;

2. Ordering and directing that the Indemnitors specifically perform their obligations under the Indemnity Agreement, exonerate Aegis and deposit with Aegis collateral security in the amount of $357,291.83;

3. Awarding interest, attorneys' fees, cost of suit and such other relief as this court deems just and proper.

**ALONGI & ASSOCIATES, LLC**
Attorneys for Plaintiffs, Aegis Security
Insurance Company and First Indemnity
of America Insurance Company

Dated:   February 2, 2018

___/s/ Paul A. Alongi_____
By:  Paul A. Alongi, Esquire (PA3501)
2740 Route 10 West, Suite 105
Morris Plains, NJ 07950
973-263-6440
paa@alongilaw.com

c:\alongi\aegis\mp3\pleadings\complaint